1
2
3
4

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

5     *Attorneys for Plaintiff*

6
7
8
9
10
11

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| TYLER SMITH, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF HUNTINGTON BEACH AND COUNTY OF ORANGE AND DOES 1–2, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. 42 U.S.C. § 1983 Fourth Amendment, Excessive Force <br> 2. 42 U.S.C. § 1983 Fourth Amendment, Denial of Medical Care <br> 3. 42 U.S.C. § 1983 Municipal Liability, Failure to Train <br> 4. 42 U.S.C. § 1983 Municipal Liability, Unconstitutional Custom, Practice, or Policy <br> 5. 42 U.S.C. § 1983 Municipal Liability, Ratification <br> 6. Americans with Disabilities Act (42 U.S.C. § 12132) <br> 7. Battery <br> 8. Negligence <br> 9. Intentional Infliction of Emotional Distress <br> 10. Violation of the Bane Act <br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

Plaintiff TYLER SMITH for his Complaint against Defendants CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, and DOES 1–2, alleges as follows:

## INTRODUCTION

1.    This civil rights action arises from the unjustified police shooting of Plaintiff TYLER SMITH, a 28-year-old man experiencing a mental health crisis. On July 16, 2024, a Huntington Beach police officer responded to a 911 call concerning SMITH's erratic behavior and suicidal ideation. Although SMITH was unarmed and posed no imminent threat, the officer shot him multiple times without warning, striking him in the face and inflicting catastrophic injuries. This action seeks redress for the violations of SMITH's constitutional and state-law rights.

## THE PARTIES

2.    Plaintiff SMITH is an individual residing in the County of Monterey, and at all relevant times, he was an individual residing in the County of Monterey.

3.    At all relevant times, Defendant CITY OF HUNTINGTON BEACH ("CITY") is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Huntington Beach Police Department and its agents and employees. At all relevant times, Defendant CITY was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the Huntington Beach Police Department and its employees and agents complied with the laws of the United States and of the State of California.

4.    Defendant DOE 1 ("DOE OFFICER") was, at the time of the respective incident, a police officer working for the Huntington Beach Police Department. At all relevant times, DOE OFFICER was acting under color of law within the course and scope of his duties as a police officer for the Huntington Beach Police Department. At all relevant times, DOE OFFICER was acting with the complete authority and ratification of his principal, Defendant CITY. Upon information and belief, DOE OFFICER was a resident of the City of Huntington Beach.

5.    At all relevant times, COUNTY OF ORANGE ("COUNTY") is and was a municipal corporation existing under the laws of the state of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Orange County Sheriff's Department and its agents and employees. At all relevant times, Defendant COUNTY was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the Orange County Sheriff's Department and its employees and agents complied with the laws of the United States and of the State of California.

6.    Defendant DOE 2 ("DOE DEPUTY") was, at the time of the respective incident, sheriffs working for the Orange County Sheriff's Department. At all relevant times, DOE DEPUTY was acting under color of law within the course and scope of his duties as a deputy for the Orange County Sheriff's Department. At all relevant times, DOE DEPUTY was acting with the complete authority and ratification of his principal, Defendant COUNTY. Upon information and belief, DOE DEPUTY was a resident of the County of Orange.

**JURISDICTION AND VENUE**

2

7.     The Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

8.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), because all incidents, events, and occurrences giving rise to this action occurred within this district.

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

9.     On July 16, 2024, at approximately 11:00 p.m., SMITH was near an Arco gas station located at 16501 Goldenwest Street, Huntington Beach.

10.     DOE OFFICER arrived at the location in response to a 911 call regarding a man behaving erratically and expressing suicidal tendencies. When DOE OFFICER contacted SMITH, he was unarmed and posed no imminent threat of death or serious bodily injury to anyone.

11.     DOE OFFICER discharged his firearm at SMITH multiple times; one of the shots hit SMITH in his face.

12.     DOE OFFICER shot SMITH despite there being less-lethal alternatives available.

13.     DOE OFFICER have no warning that he was going to use deadly force.

14.     The shooting inflicted severe, life-altering injuries on SMITH. He suffered permanent facial disfigurement and lost sensation in the right side of his face, chin, tongue, ear, and throat. The trauma resulted in permanent tooth loss and required the installation of metal plates and a rod in his jaw. Mr.

Smith also sustained a C1 vertebra fracture causing ongoing neck pain. These injuries have resulted in permanent disability and ongoing medical complications that have completely altered the course of SMITH's life.

15.    DOE OFFICER did not timely request medical assistance for SMITH despite obvious severity of SMITH's injuries.

16.    Eventually, SMITH was transported to Anaheim Global Medical Center, in Anaheim, CA.

17.    SMITH was lying in a hospital bed when DOE DEPUTY arrived and placed SMITH in handcuffs and fastened them extremely tightly, causing bruising and lasting pain to SMITH'S wrists.

18.    DOE DEPUTY told SMITH that had it been him who responded to the call, he would have left SMITH to bleed out in the street.

19.    On or about January 9, 2025, Plaintiff filed his comprehensive and timely claim for damages with CITY, COUNTY, and DOES 1–2 pursuant to applicable sections of the California Government Code.

## FIRST CLAIM FOR RELIEF

### Fourth Amendment—Excessive Force (42 U.S.C. § 1983)

(Plaintiff against DOE OFFICER and DOE DEPUTY)

20.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

**A.    Excessive Force by DOE OFFICER – Liability of CITY**

21.    The Fourth Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by police officers.

22.    Upon information and belief, DOE OFFICER escalated the situation, failed to give SMITH the time and space to understand the presence of law enforcement, failed to give SMITH proper commands and the time to

4

comply with those commands, failed to give SMITH the opportunity to cooperate with law enforcement instructions, resorted to deadly force when alternative methods were available, and failed to give SMITH a verbal warning prior to the use of deadly force even though it was feasible to do so.

23. DOE OFFICER used excessive and unjustified deadly force against SMITH. DOE OFFICER's unjustified use of force deprived SMITH of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment.

24. As a result of the foregoing, SMITH suffered immense physical pain and injury, emotional injury, loss of enjoyment of life, loss of earning capacity, and permanent physical impairments.

25. The use of force was excessive and unreasonable because SMITH posed no immediate threat of death or serious bodily injury at the time of the shooting or at any time immediately prior to the shooting.

26. Upon information and belief, SMITH was not attempting to evade or resist by flight, and no warning was given prior to the use of deadly force. DOE OFFICER was not responding to a violent or dangerous crime, and there were several alternatives available that did not involve the use of lethal force. Further, DOE OFFICER's use of force violated his training and standard police officer training.

27. As a result of his misconduct, DOE OFFICER is liable for SMITH's injuries.

28. DOE OFFICER's conduct was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of SMITH, entitling Plaintiff to an award of punitive damages.

**B.   Excessive Force by DOE DEPUTY – Liability of COUNTY**

29. Upon information and belief, DOE DEPUTY used excessive and unjustified force against SMITH by tightly handcuffing him while he was

5

lying in a hospital bed recovering from multiple gunshot wounds, causing bruising and additional pain.

30.    At all relevant times, SMITH posed no threat to DOE DEPUTY or anyone else, was not resisting or attempting to flee, and was receiving medical care. The force used was unnecessary, unreasonable, and excessive under the circumstances.

31.    DOE DEPUTY's use of force violated SMITH's clearly established right under the Fourth Amendment to be free from excessive force during detention or arrest.

32.    DOE DEPUTY's actions were taken under color of law and within the scope of his employment as a sheriff for Defendant COUNTY.

33.    As a result of DOE DEPUTY's conduct, SMITH suffered additional pain, emotional distress, and mental anguish.

34.    34. DOE DEPUTY's conduct was malicious, wanton, oppressive, and carried out with a conscious disregard for the rights of SMITH, entitling Plaintiff to an award of punitive damages.

**C.    Damages**

35.    As a result of the acts and omissions of DOE OFFICER, Plaintiff seeks all compensatory damages permitted by law, including but not limited to: past and future medical expenses; past and future physical pain and suffering; past and future emotional distress; loss of enjoyment of life; loss of earning capacity and income; and permanent disability and disfigurement.

36.    As to DOE DEPUTY, Plaintiff seeks damages limited to the physical pain and emotional distress caused by the excessive and unnecessary use of handcuffs while Plaintiff was hospitalized.

37.    Plaintiff seeks punitive damages against DOE OFFICER and DOE DEPUTY because their conduct was malicious, wanton, oppressive.

38.    Plaintiff also seeks attorneys' fees and costs under this claim

## SECOND CAUSE OF ACTION

### Fourth Amendment – Denial of Medical Care (42 U.S.C. § 1983)

(Plaintiff against DOE OFFICER)

39.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

40.    Upon information and belief, after the shooting, DOE OFFICER failed to provide or summon timely medical care to SMITH and failed to timely summon medical care for SMITH. His delay and/or denial of medical care was a cause of SMITH's pain, suffering, and injuries.

41.    The denial of medical care deprived SMITH of his right to be secure in his person against unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

42.    As a direct result of these acts and omissions of DOE OFFICER, SMITH suffered great physical and mental injury, fear and emotional distress.

43.    Plaintiff seeks all available damages permitted by law, including but not limited to: past and future medical expenses; past and future physical pain and suffering; past and future emotional distress; loss of enjoyment of life; loss of earning capacity and income; and permanent disability and disfigurement.

44.    Plaintiff also seeks attorneys' fees and costs under this claim.

## THIRD CLAIM FOR RELIEF

### Municipal Liability for Failure to Train (42 U.S.C. §1983)

(Plaintiff against CITY)

45.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if

fully set forth herein.

46.    As detailed in Plaintiff's First and Second Claims, DOE OFFICER's actions deprived SMITH of his Fourth Amendment rights under the United States Constitution.

47.    Upon information and belief, CITY failed to properly and adequately train DOE OFFICER in the use of physical force, less than lethal force, and lethal force; the use of reasonable alternatives to the use of deadly force; proper communication, proper warning; utilizing time, space, distance, cover and concealment; pre-shooting tactics, techniques, and procedures; de-escalation; not waiting for sufficient assets, equipment and personnel to arrive before engaging in situations; controlling officer emotions and fears including inadequate "warrior training" that imbues officers with irrational fears about every situation and encourages excessive and unreasonable force and overreacting to a situation; inappropriate "shoot/don't shoot" scenarios in training that promote the use of unreasonable force; continually assessing a situation to justify every shot fired; and providing medical care to person they have injured.

48.    The training policies of CITY were not adequate to train its employees to handle the usual and recurring situations with which they must deal, including de-escalation techniques, the use of less than lethal and lethal force, and pre-shooting tactics.

49.    CITY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

50.    The failure of CITY to provide adequate training caused the deprivation of Plaintiff's rights by DOE OFFICER; that is, CITY's failure to train is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

51.    Plaintiff seeks all available damages permitted by law, including

but not limited to: past and future medical expenses; past and future physical pain and suffering; past and future emotional distress; loss of enjoyment of life; loss of earning capacity and income; and permanent disability and disfigurement.

52. Plaintiff also seeks attorneys' fees and costs under this claim.

## FOURTH CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)**

(Plaintiff against CITY)

53. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth and herein

54. As detailed in Plaintiff's First and Second Claims, DOE OFFICER's actions deprived SMITH of his Fourth Amendment rights under the United States Constitution.

55. DOE OFFICER acted pursuant to an expressly adopted official policy or longstanding practice of custom of the Defendant CITY.

56. Upon information and belief, DOE OFFICER was not disciplined, reprimanded, suspended, or otherwise penalized in connection with the deprivation of SMITH's rights.

57. Defendants CITY and CITY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a) Using excessive force

(b) Failing to use and exhaust reasonable alternatives to the use of deadly force

(c) Failing to give adequate commands and time to comply with those demands

(d) Failing to give adequate verbal warning that the use of deadly force will be used and time to heed such a warning

(e) Providing inadequate training regarding the use of force, including deadly force, use of force, and use of reasonable alternatives to the use of deadly force

(f) Employing and retaining as law enforcement officers, individuals such as DOE OFFICER at all times material herein, knew or reasonably should have known had dangerous propensities for abusing his authority and for using excessive force

(g) Inadequately supervising, training, controlling, assigning, and disciplining CITY officers, and other personnel, including DOE OFFICER, who CITY knew or in the exercise of reasonable care should have known, had these propensities or character traits

(h) Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by officers of CITY

(i) Ratifying unconstitutional conduct and failing to adequately discipline CITY officers for the above-mentioned categories of misconduct, including inadequate discipline and "slaps on the wrist," discipline that is so slight as to be out of proportion with the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct

(j) Announcing that unjustified shootings are "within policy" even when they are later determined to be unconstitutional and refusing to discipline, terminate, and retrain officers involved in unconstitutional conduct

(k) Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil,"

or simply "code of silence," pursuant to which officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officer's wrongdoing

(l) Maintaining a policy of inaction and an attitude of indifference towards police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings

(m) Upon information and belief, CITY has an unofficial policy, practice, and/or custom of finding almost all- if not all- of its officers involved shootings to be within policy, of not disciplining its officers involved in shootings, or not retraining or firing officers involved in shootings, and of not recommending criminal charges against their officers involved in excessive and unreasonable officer-involved shootings. As a result, officers involved in excessive uses of deadly force are allowed back to patrol the streets even though CITY knew, or should have known, that these officers have a propensity for using excessive deadly force against the citizens that the officers are supposed to protect and serve.

(n) Upon information and belief, as a result of CITY policy, customs, and/or practices, officers know that if they use deadly force against someone, they will not be disciplined and their use of force will be found within policy, which results in a significant number of CITY officers being involved in numerous shootings. This policy, custom, and/or practice was established

11

by supervising and managerial employees of CITY, specifically, those employees tasked with determining whether officer-involved shootings fall within policy, those employees responsible for disciplining, retraining, and firing employees who use excessive force, and for those employees responsible for making recommendations of criminal charges being filed against officers who use excessive deadly force

(o) Upon information and belief, this policy, custom, and/or practice long lasting and persistent, existed well before SMITH was injured by DOE OFFICER. This policy, custom, and/or practice was established so that CITY officers do not bear the responsibility for the people that they excessively use deadly force against. This policy, custom, and/or practice exists so that the public does not have such a negative perception of CITY and its law enforcement departments and so that CITY can avoid the repercussions associated with its officers' use of excessive deadly force against citizens, including negative publicity, avoiding criminal prosecution, and avoiding civil liability. A significant reason that this policy, custom, and/or practice was established was to avoid CITY being liable, under a theory of vicarious liability, for the uses of excessive and unreasonable deadly force by its employees. In other words, there is a large financial incentive for CITY to erroneously determine that most, if not all, of its officers' uses of deadly force are within policy. If CITY, through its policymakers and supervisors, would admit that their officers were at fault for using excessive and unreasonable deadly force, then CITY is well aware of how much they would have to pay for any associated litigation

COMPLAINT FOR DAMAGES

58.    Because of these acts and omissions, Plaintiff SMITH suffered substantial pain and suffering, loss of enjoyment of life, and substantial physical and mental injury.

59.    Defendant CITY had either constructive or actual knowledge of the deficient policies, practices, and/or customs alleged herein. Despite having knowledge as stated above, CITY condoned, tolerated, and through action and inactions, thereby ratified such policies. CITY also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of SMITH and other individuals similarly situated.

60.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, CITY acted with intentional, reckless, and callous disregard for SMITH's constitutional rights. Furthermore, the policies, practices, and/or customs implemented, maintained, and tolerated by CITY were affirmatively linked to and were a significantly influential force behind SMITH's injuries.

61.    Because of these acts and omissions of CITY, SMITH suffered pain and suffering, and loss of enjoyment of life.

62.    Accordingly, CITY is liable for compensatory damages under 42 U.S.C. § 1983.

63.    Plaintiff SMITH seeks damages, including but not limited to past and future medical expenses, past and future pain and suffering, past and future emotional distress, and past and future loss of income.

64.    Plaintiff SMITH also seeks attorneys' fees and costs under this claim

COMPLAINT FOR DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(Plaintiff against CITY)

65.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

66.    As detailed in Plaintiff's First and Second Claims, DOE OFFICER's actions deprived SMITH of his Fourth Amendment rights under the United States Constitution.

67.    Upon information and belief, a final policymaker, acting under color of law, has a history of ratifying unreasonable uses of force, including deadly force.

68.    Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of DOE OFFICER, ratified the acts and bases for the acts of DOE OFFICER. Upon information and belief, the final policymaker knew of and specifically approved of the acts of DOE OFFICER.

69.    Upon information and belief, CITY's final policymakers knew that SMITH was not an immediate threat of death or serious bodily injury to any person at the time of DOE OFFICER's use of deadly force.

70.    Upon information and belief, the official policies with respect to the incident are that officers are not to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injury to the officers or others, or if the individual has inflicted death or serious bodily injury against someone or threatened to do so, the officers may use deadly force to prevent the individual's escape. The officers' actions deviated from these official policies because SMITH did not pose an immediate threat of death or serious bodily injury to the involved officers or

14

anyone.

71.     Upon information and belief, a final policymaker has determined (or will determine) that the acts of DOE OFFICER were "within policy."

72.     Because of these acts and omissions, SMITH suffered past and future pain and suffering, past and future medical expenses, and physical and emotional distress.

73.     Accordingly, CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

74.     Plaintiff seeks damages, including but not limited to past and future medical expenses, past and future pain and suffering, past and future emotional distress and past and future loss of income.

75.     Plaintiff also seeks attorneys' fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

### Americans with Disabilities Act 42 U.S.C. § 12132

(Plaintiff against CITY)

76.     Plaintiff SMITH repeats and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein

77.     At all relevant times, SMITH was a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2). SMITH suffered from a mental impairment that substantially limited one or more major life activities, including his ability to regulate his behavior and care for himself. DOE OFFICERS knew or should have known of SMITH's disability, as they were responding to a call reporting erratic behavior and suicidal ideation. Despite this, Defendants failed to reasonably accommodate SMITH's known mental health disability and instead subjected him to discriminatory and excessive force in violation of the ADA.

15

78.    Defendant CITY is a "public entity" within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(1), and is therefore subject to the ADA's requirements. CITY operates and funds the Huntington Beach Police Department and is responsible for the policies, practices, and training of its law enforcement officers. As a municipal government and chartered subdivision of the State of California, CITY provides public services, including law enforcement, and is required to ensure that such services are administered in a non-discriminatory manner to individuals with disabilities.

79.    Defendant CITY is mandated to develop effective procedures for interactions with individuals with mental disabilities and to ensure the protection of their personal and civil rights.

80.    DOE OFFICER was aware or should have been aware that SMITH was suffering from suicidal tendencies and severe mental health issues.

81.    DOE OFFICER had numerous options to accommodate SMITH's condition, including, but not limited to:

    (a) Deploying a crisis intervention team with officers specially trained in mental health crisis intervention

    (b) Requesting the assistance of a mental health professional to accompany officers or provide immediate consultation;

    (c) Employing de-escalation techniques such as calm communication, active listening, and non-threatening body language;

    (d) Implementing time and distance strategies to create physical space and allow more time for the situation to de-escalate;

    (e) Following clear, empathetic communication protocols designed for interacting with individuals in crisis;

16

(f) When safe and possible, involving family members or friends who could help calm SMITH;

(g) Deploying a specialized mobile crisis team that includes both law enforcement and mental health professionals;

(h) Utilizing trained negotiators to communicate with SMITH and work towards a peaceful resolution;

(i) Creating a temporary safe environment to continue dialogue and assessment without immediate threat;

(j) Refraining from brandishing firearms, which can escalate tensions and exacerbate the mental health crisis of an individual contemplating suicide by cop;

82.    Defendant CITY violated the ADA by: failing to properly train its police officers to respond and interact peacefully with suicidal individuals, such as SMITH; failing to follow procedures for de-escalation and non-lethal force in interactions with SMITH, who was experiencing a mental health crisis; and failing to utilize any of the above reasonable accommodations.

83.    Thus, Plaintiff seeks all available damages permitted by law, including but not limited to: past and future medical expenses; past and future physical pain and suffering; past and future emotional distress; loss of enjoyment of life; loss of earning capacity and income; permanent disability and disfigurement.

84.    Plaintiff also seeks reasonable attorneys' fees and costs under this claim

## SEVENTH CLAIM FOR RELIEF

**Battery (Cal. Govt. Code § 820 and California Common Law)**

(Plaintiff against DOE OFFICER and DOE DEPUTY directly and Defendants

17

CITY and COUNTY vicariously)

85.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

**A.    Battery by DOE OFFICER – Liability of CITY**

86.    DOE OFFICER intentionally and unlawfully discharged his firearm at SMITH multiple times, striking him and causing severe injuries. The use of deadly force was not legally justified and constituted an offensive and harmful touching under California law.

87.    At the time of the shooting, SMITH was unarmed and did not pose an immediate threat of death or serious bodily injury to any person, including DOE OFFICER. DOE OFFICER failed to give a warning prior to using deadly force, and less-lethal alternatives were readily available. SMITH did not have the ability, opportunity or present intent to cause death or serious injury to anyone.

88.    DOE OFFICER's actions were unreasonable under the circumstances and constitute a battery under California law.

89.    DOE OFFICER's conduct was malicious, wanton, oppressive, and carried out with conscious disregard for SMITH's rights, entitling Plaintiff to an award of exemplary and punitive damages.

90.    Defendant CITY is vicariously liable under California Government Code § 815.2 for the battery committed by DOE OFFICER, as the acts occurred within the course and scope of his employment.

**B.    Battery by DOE DEPUTY – Liability of COUNTY**

91.    While SMITH lay in a hospital bed recovering from multiple gunshot wounds, DOE DEPUTY intentionally applied handcuffs in an excessively tight manner, causing bruising and lasting pain. This conduct constituted an unreasonable, harmful, and offensive touching under California

18

law.

92.    DOE DEPUTY's conduct was malicious, wanton, oppressive, and carried out with conscious disregard for SMITH's rights, entitling Plaintiff to an award of exemplary and punitive damages.

93.    Defendant COUNTY is vicariously liable under California Government Code § 815.2 for the battery committed by DOE DEPUTY, as the acts occurred within the course and scope of his employment.

**C.    Damages**

94.    As a result of the acts and omissions of DOE OFFICER, Plaintiff seeks all compensatory damages permitted by law against Defendant CITY and DOE OFFICER, including but not limited to: past and future medical expenses; past and future physical pain and suffering; past and future emotional distress; loss of enjoyment of life; loss of earning capacity and income; and permanent disability and disfigurement.

95.    As to Defendant COUNTY and DOE DEPUTY, Plaintiff seeks damages limited to the physical pain and emotional distress caused by the excessive and unnecessary use of handcuffs while Plaintiff was hospitalized.

96.    Plaintiff seeks punitive damages against DOE OFFICER and DOE DEPUTY because their conduct was malicious, wanton, oppressive.

## EIGTH CLAIM FOR RELIEF

### Negligence (Cal. Govt. Code § 820 and California Common Law)

(Plaintiff against DOE OFFICER and DOE DEPUTY directly and CITY and COUNTY vicariously)

97.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

**A.    Negligence of DOE OFFICER – Liability of CITY**

98.    Police officers, including DOE OFFICER, have a duty to use

19

reasonable care to prevent harm and injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving appropriate warnings, use of de-escalation techniques, and not using any force unless necessary, using the least amount of force necessary, and only using deadly force as a last resort, and providing timely medical care for a person the who has been intentionally harmed. These duties also include the  responsibility to follow their training and policies, responsibility to ensure they are properly trained and equipped to perform their duties in accordance with the department policies, and properly investigate and report on their use of force incidents.

99.    DOE OFFICER breached his duty of care. Upon information and belief, the actions and inactions of DOE OFFICER were negligent and reckless, including but not limited to:

(a)    the failure to properly and adequately assess the need to use force against SMITH.

(b)    the negligent tactics and handling of the situation with SMITH, including pre-shooting negligence and failure to utilize de-escalation techniques.

(c)    the failure to provide or call for adequate medical care.

100.    As a direct and proximate result of DOE OFFICER's conduct as alleged above, and other undiscovered negligent conduct, SMITH was caused to suffer severe mental and physical pain and suffering, loss of enjoyment of life, loss of earning capacity and income; and permanent disability and disfigurement.

## A.    Negligence of DOE DEPUTY – Liability of COUNTY

101.    Law enforcement personnel, including DOE DEPUTY, owe a duty to exercise reasonable care in the execution of their duties. This includes using appropriate force under the circumstances, employing sound

judgment in determining whether restraints are necessary, and avoiding actions that cause unnecessary harm—especially when interacting with medically vulnerable individuals.

102.   DOE DEPUTY breached that duty by handcuffing SMITH tightly and unnecessarily while SMITH was lying in a hospital bed recovering from multiple gunshot wounds. The force used was excessive and unreasonable given the circumstances, and caused further injury to SMITH.

103.   As a direct and proximate result of DOE DEPUTY's negligence, SMITH suffered additional physical pain, emotional distress, and loss of enjoyment of life.

104.   At all relevant times, SMITH was seriously injured and posed no threat that justified the use of handcuffs or the manner in which they were applied.

105.   Defendant COUNTY is vicariously liable for the negligent acts and omissions of DOE DEPUTY under California Government Code § 815.2(a), as DOE DEPUTY was acting within the course and scope of his employment.

**C.   Damages**

106.   As a result of the negligent acts and omissions of DOE OFFICER, Plaintiff seeks all compensatory damages permitted by law against Defendant CITY and DOE OFFICER, including but not limited to: past and future medical expenses; past and future physical pain and suffering; past and future emotional distress; loss of enjoyment of life; loss of earning capacity and income; and permanent disability and disfigurement.

107.   As to Defendant COUNTY and DOE DEPUTY, Plaintiff seeks damages limited to the physical pain and emotional distress caused by the excessive and unnecessary use of handcuffs while Plaintiff was hospitalized.

**NINTH CLAIM FOR RELIEF**

**Intentional Infliction of Emotional Distress (Cal. Govt. Code § 815.3 and**

**California Common Law)**

(Plaintiff against DOE DEPUTY directly and COUNTY vicariously)

108.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

109.    DOE DEPUTY acted in the course and scope of their employment as deputies for Defendant COUNTY and acted under color of state law.

110.    DOE DEPUTY acted in an extreme and outrageous conduct in two instances: (1) DEPUTY DOE told SMITH that he would have left him bleeding on the street had it been him to responded to the scene. (2) DOE DEPUTY interrogated SMITH at length and accused him of provoking the police to shoot.

111.    DOE DEPUTY acted with the intent to cause, or with reckless disregard of the probability of causing, emotional distress to SMITH.

112.    SMITH suffered severe emotional distress as a result of DOE DEPUTY' conduct.

113.    DOE DEPUTY' conduct was the actual and proximate cause of SMITH's emotional distress.

114.    DOE DEPUTY's conduct was malicious, wanton, oppressive, and carried out with conscious disregard for SMITH's rights, entitling Plaintiff to an award of exemplary and punitive damages.

115.    COUNTY is vicariously liable for the wrongful acts of DOE DEPUTY pursuant to section 815.2(a) of the CA Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of their employment if the employee's act would subject him or her to liability.

116.    As a result of DOE DEPUTY's extreme and outrageous conduct,

COMPLAINT FOR DAMAGES

Plaintiff seeks compensatory damages from DOE DEPUTY and Defendant COUNTY for the emotional distress caused by the conduct described above, including damages for mental suffering, anxiety, humiliation, and emotional anguish. Plaintiff also seeks punitive damages against DOE DEPUTY.

## TENTH CLAIM FOR RELIEF

### Violation of Cal. Civil Code § 52.1

(Plaintiff against DOE OFFICER and DOE DEPUTY directly and CITY and COUNTY vicariously)

117.   Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

118.   DOE OFFICER acted within the course and scope of their employment as police Defendant CITY and acted under color of state law.

119.   The Bane Act, the California Constitution, and California common law prohibit the use of excessive force by law enforcement. California Civil Code, Section 52.1(b) authorizes a private right of action and permits survival actions for such claims.

120.   Upon information and belief, DOE OFFICER, while working for CITY and acting within the course and scope of his duties, intentionally committed and attempted to commit acts of violence against SMITH, including using excessive and deadly force against him without justification or excuse.

121.   When DOE OFFICER unnecessarily shot SMITH, he interfered with his civil rights to be free from unreasonable searches and seizures, due process, equal protection of the laws, and life, liberty, and property. DOE OFFICER intentionally used deadly force, demonstrated by his reckless disregard for SMITH's right to be free from excessive force.

122.   DOE OFFICER's conduct was malicious, wanton, oppressive,

and accomplished with a conscious disregard for the rights of SMITH, entitling Plaintiff to an award of exemplary and punitive damages.

123.   Defendant CITY is vicariously liable for the wrongful acts of DOE OFFICER under California law and the doctrine of respondeat superior and section 815.2(a) of the California Government Code.

124.   Upon information and belief, DOE DEPUTY, while working for Defendant COUNTY, and acting within the scope of their duties, intentionally committed and attempted to commit acts of violence against SMITH, including using excessive force without justification or excuse.

125.   When DOE DEPUTY handcuffed SMITH, they caused unnecessary bruising and lasting pain to SMITH's wrists at a time when SMITH was receiving treatment for multiple gunshot wounds, including one to the face. DOE DEPUTY interfered with SMITH's civil rights to be free from unreasonable searches and seizures, due process, equal protection of the laws, and life, liberty, and property. DOE DEPUTY intentionally used excessive force, demonstrated by their reckless disregard for SMITH's right to be free from excessive force.

126.   Upon information and belief, DOE DEPUTY intentionally committed the above acts to discourage SMITH from exercising his civil rights.

127.   Upon information and belief, SMITH reasonably believed that the violent acts committed by DOE OFFICER and DOE DEPUTY were intended to discourage him from exercising his civil rights.

128.   DOE OFFICER and DOE DEPUTY successfully interfered with the civil rights of SMITH.

129.   DOE DEPUTY's conduct was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of SMITH, entitling Plaintiff to an award of exemplary and punitive damages.

130.    SMITH was caused to suffer severe pain, loss of enjoyment of life, among other harms. The conducts of DOE OFFICER and DOE DEPUTY were a substantial factor in causing the harm, losses, injuries, and damages of SMITH.

131.    SMITH seeks survival damages, costs, and attorneys' fees under this claim.

132.    SMITH also seeks punitive damages under this claim against DOE OFFICER and DOE DEPUTY.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in his favor against Defendants CITY OF HUNTINGTON BEACH, ORANGE COUNTY, and DOES 1-2

1.    For compensatory damages according to proof at trial;

2.    For general damages in the amount to be proven at trial;

3.    For special damages according to proof; including past and future medical expenses;

4.    For statutory damages;

5.    For punitive damages against DOE OFFICER in an amount to be proven at trial;

6.    For reasonable attorneys' fees including litigation expenses;

7.    For costs of suit and interest incurred herein; and

8.    For such other and further relief as the Court may deem just, proper, and appropriate.


DATED: June 19, 2025         **LAW OFFICES OF DALE K. GALIPO**


By:    */s/ Dale K. Galipo*
        Dale K. Galipo

Cooper Alison-Mayne
*Attorneys for Plaintiff*

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby submits this demand that this action be tried in front of a jury.

DATED: June 19, 2025          **LAW OFFICES OF DALE K. GALIPO**


By:   */s/    Dale K. Galipo*
　　　　　Dale K. Galipo
　　　　　Cooper Alison-Mayne
　　　　　*Attorneys for Plaintiff*

COMPLAINT FOR DAMAGES