1

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)

2

dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)

3

cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310

4

Woodland Hills, CA 91367
Phone: (818) 347-3333

5

6

*Attorneys for Plaintiff Tyler Smith*

7

8

### UNITED STATES DISTRICT COURT

9

### CENTRAL DISTRICT OF CALIFORNIA

10

11

TYLER SMITH

Case No.: 8:25−cv−01326−JWH−DFM
*Hon. Judge Holcomb*
*Hon. Magistrate Judge McCormick*

12

Plaintiff,

13

vs.

**PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF HUNTINGTON BEACH'S MOTION TO DISMISS (ECF NO. 16)**

14

CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, AND DOES 1–2,

15

16

Defendants.

Hearing Date:    August 22, 2025
Hearing Time:    9:00 a.m.
Location:         9D — Santa Ana

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF HUNTINGTON BEACH'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................. 6
II.     BACKGROUND ................................................................ 6
III.    MOTION SHOULD BE DENIED FOR PROCEDURAL DEFECTS.......... 7
IV.     MOTION SHOULD BE DENIED FOR FAILURE TO DEVELOP ANY LEGAL ARGUMENTS.................................................... 9
V.      LEGAL STANDARD .......................................................... 9
VI.     DISCUSSION ................................................................. 11
        A.    THE FIRST CAUSE OF ACTION STATES A FOURTH AMENDMENT CLAIM OF EXCESSIVE FORCE .............................................11
        B.    THE SECOND CAUSE OF ACTION STATES A FOURTH AMENDMENT CLAIM OF DENIAL OF MEDICAL CARE ....................................12
        C.    THE THIRD CAUSE OF ACTION STATES A CLAIM UNDER MONELL FOR FAILURE TO TRAIN ....................................................13
        D.    THE FOURTH CAUSE OF ACTION STATES A CLAIM UNDER MONELL FOR UNCONSTITUTIONAL CUSTOMS AND POLICIES.................15
        E.    THE FIFTH CAUSE OF ACTION STATES A CLAIM UNDER MONELL FOR RATIFICATION .......................................................16
        F.    THE SIXTH CAUSE OF ACTION STATES A CLAIM UNDER THE ADA......16
        G.    THE SEVENTH CAUSE OF ACTION STATES A BATTERY CLAIM .............18
        H.    THE EIGHTH CAUSE OF ACTION STATES A NEGLIGENCE CLAIM...........19
        I.    THE NINTH CAUSE OF ACTION IS NOT BROUGHT AGAINST THE CITY ........................................................................19
        J.    THE TENTH CAUSE OF ACTION STATES A CLAIM UNDER THE BANE ACT ...................................................................20
        K.    SHOULD THE COURT DISMISS ANY CLAIMS, PLAINTIFF REQUESTS LEAVE TO AMEND ........................................................20
VII.    CONCLUSION.............................................................. 21

PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF HUNTINGTON BEACH'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................8, 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...........................................8

*Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007)...............................12

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys, Inc.*, 637 F.3d 1047 (9th Cir. 2011) ....................................................................................................................................9

*Capogrosso v. Sup. Ct.*, 588 F.3d 180 (3rd Cir. 2009) ............................................9

*Carmax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078 (C.D. Cal. 2015) .........................................................................................................................7

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002)....................................6, 7

*City of Canton v. Harris*, 489 U.S. 378 (1989)...............................................12, 14

*Conley v. Gibson*, 355 U.S. 41 (1957) ...................................................................9

*Davis v. Passman*, 442 U.S. 228 (1979) ................................................................8

*DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655 (9th Cir. 1992)..................19

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003)................19

*Erickson v. Pardus*, 551 U.S. 89 (2007) ...............................................................9

*Foman v. Davis*, 371 U.S. 178 (1962) ..................................................................19

*Graham v. Connor*, 490 U.S. 386 (1989) .............................................................10

*Ileto v. Glock, Inc.*, 349 F.3d 1191 (9th Cir. 2003) ...............................................8

*Johnson v. Shasta Cnty.*, 83 F. Supp. 3d 918 (E.D. Cal. Jan. 5, 2015) .................13

*Leatherman v. Tarrant Cnty.*, 507 U.S. 163 (1993) ...............................................9

*Lolli v. County of Orange*, 351 F.3d 410 (9th Cir. 2003)......................................11

*Lopez v. Wells Fargo Bank, N.A.*, 2016 WL 6088257 (C.D. Cal. Oct. 17, 2016).....7

*Martinez v. Newport Beach City*, 125 F3d 777 (9th Cir. 1997) .............................19

*Monell v. Department of Social Services*, 436 U.S. 658 (1978).............................13

*N. Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578 (9th Cir. 1983) ...................9

*Ostling v. City of Bainbridge Island*, 872 F. Supp. 2d 1117 (W.D. Wash. May 7, 2012) ................................................................................................12

*Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992) ............................................... 12, 14

*Paratt v. Taylor*, 451 U.S. 527 (1981) .......................................................................9

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ............................................13

*R.H. v. Cnty. of San Bernardino*, 2019 WL 10744836 (C.D. Cal. Sept. 25, 2019)...7

*Reese v. Cnty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) ...............................18

*Shaw v. California Dep't of Alcoholic Beverage Control*, 788 F.2d 600 (9th Cir. 1986) ........................................................................................................13

*Sheehan v. City and County of San Francisco* 743 F.3d 1211 (9th Cir. 2014) .......16

*Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008)..............................9

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).................................................9

*Tatum v. City and County of San Francisco*, 441 F.3d 1090 (9th Cir. 2006) .........11

*Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010 (C.D. Cal. Mar. 20, 2018) ...........................................................................................................8

*Tsao v. Desert Place, Inc.*, 698 F.3d 1128 (9th Cir. 2012).....................................12

*Unicorn Glob., Inc. v. Hillo Am., Inc.*, 2021 WL 1034838 (C.D. Cal. Feb. 12, 2021) ............................................................................................................7

*United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010) ..............................................8

*United States v. Reese*, 2 F.3d 870 (9th Cir. 1993)................................................18

## Statutes

42 U.S.C. § 1983 ............................................................................................ 10, 12

Federal Rules of Civil Procedure 12(b)(6) ....................................................... 5, 8, 9

Local Rule 7-3.................................................................................................... 5, 6, 7

Federal Rule of Civil Procedure Rule 8...............................................................8, 9

Title II of the ADA...............................................................................................15

## Jury Instructions

CACI 1305A/B ........................................................................................................17

CACI 400 ...........................................................................................................17

CACI 440 ...........................................................................................................17

## I.    INTRODUCTION

This case arises from the unjustified police shooting of Plaintiff Tyler Smith, a 28-year-old man experiencing a mental health crisis. On July 16, 2024, a Huntington Beach police officer ("Doe Officer") responded to a 911 call regarding Plaintiff's suicidal ideation and erratic behavior. Although Plaintiff was unarmed and posed no imminent threat to anyone, Doe Officer shot him without warning, striking him in the face and inflicting catastrophic injuries.

Plaintiff brings claims under federal and state law for excessive force, denial of medical care, disability discrimination, and municipal liability. In response, the City of Huntington Beach ("City") filed a motion to dismiss (ECF No. 16, hereinafter, "Motion"), supported by only a few pages of undeveloped argument and largely devoid of legal authority. Furthermore, the Motion fails to comply with Local Rule 7-3, as the City did not engage in any meaningful effort to meet and confer about the issues it now raises.

The Motion should be denied in its entirety. Not only are Plaintiff's allegations more than sufficient to state viable claims for relief, but the City has failed to satisfy its burden on a Federal Rules of Civil Procedure 12(b)(6) motion or comply with the basic procedural requirements of this District.

## II.    BACKGROUND

On July 16, 2024, around 11:00 p.m., Plaintiff Tyler Smith was near an Arco gas station located at 16501 Goldenwest Street in Huntington Beach. Plaintiff, who was in the midst of a severe mental health crisis, had been exhibiting erratic behavior and expressing suicidal ideation—facts known to the Huntington Beach Police Department through a 911 call. (ECF No. 1 ¶¶ 9–10, "Compl.")

In response to that call, Defendant Doe Officer—a Huntington Beach police officer—arrived at the scene. Upon encountering Plaintiff, despite Doe Officer observing that he was unarmed and posed no immediate threat of death or serious

bodily injury to anyone (¶ 10.), without giving any verbal warning, Doe Officer shot Plaintiff, striking him in the face. (¶¶ 11, 13.)

The shooting caused catastrophic injuries. Plaintiff suffered permanent facial disfigurement, nerve damage, loss of sensation across much of his face, tongue, and throat, and significant dental trauma requiring surgical intervention, and the implantation of metal hardware in his jaw. He also sustained a fracture to his C1 vertebra and suffers chronic pain and physical limitations. (¶ 14.)

Plaintiff filed his complaint on June 19, 2025. The City filed a Motion to Dismiss on July 23, 2025, and Plaintiff filed this opposition on August 1, 2025.

## III. MOTION SHOULD BE DENIED FOR PROCEDURAL DEFECTS

The Court need not reach the merits of this motion, because the Motion should be denied for failure to adequately meet and confer as required by Local Rule 7-3. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ("The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing.").

Local Rule 7-3 requires "counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." On July 9, 2025, defense counsel informed Plaintiff's counsel that the City was considering filing a motion to dismiss. However, the only issue raised during that conversation was defense counsel's general belief that the complaint lacked sufficient factual allegations. Defense counsel briefly mentioned their uncertainty regarding Plaintiff's Americans with Disabilities Act ("ADA") claim but provided no specific analysis and did not follow up.

In response, Plaintiff's counsel explained that Plaintiff was open to supplementing the complaint with additional facts but was unable to do so because the City refuses to produce body-worn camera footage of the incident—a critical

piece of evidence that would shed light on the events and shooting that transpired. Plaintiff's counsel expressly offered to amend the complaint voluntarily if the City would agree to share the video. The City declined and instead filed this motion.

The City never identified specific deficiencies in any of the claims, articulated arguments in support of dismissal, or engaged in any meaningful effort to resolve the issues short of court intervention. Plaintiff's counsel was fully prepared to discuss the substance of the claims and consider potential amendments, but there was simply nothing to respond to. The City's participation in the meet and confer process fell far short of what Local Rule 7-3 requires.

The City did not make a good faith effort to resolve issues without having to resort to motion practice. It was treated as a procedural formality—one that failed to serve the rule's purpose of narrowing disputes and conserving judicial resources. Courts in this district regularly deny motions for noncompliance with Rule 7-3, emphasizing that it serves important purposes—promoting informal resolution, narrowing disputes, and conserving judicial resources. *See, e.g., Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002); *Unicorn Glob., Inc. v. Hillo Am., Inc.*, 2021 WL 1034838, at *1 (C.D. Cal. Feb. 12, 2021); *Lopez v. Wells Fargo Bank, N.A.*, 2016 WL 6088257, at *2 (C.D. Cal. Oct. 17, 2016); *Carmax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088–89 (C.D. Cal. 2015); *R.H. v. Cnty. of San Bernardino*, 2019 WL 10744836, at *1 (C.D. Cal. Sept. 25, 2019) (cleaned up) ("The purpose of Local Rule 7-3 is to help parties reach a resolution and eliminate the necessity for a hearing, which in turn promotes judicial economy and the administration of justice."). Hence, the Motion should be denied on this basis alone.

## IV.    MOTION SHOULD BE DENIED FOR FAILURE TO DEVELOP ANY LEGAL ARGUMENTS

The City moves to dismiss all ten of Plaintiff's claims with less than five pages of arguments which are mostly asserted without any legal authority. Notably, one of the longest sections of the Motion asks the Court to dismiss Plaintiff's claim for Intentional Infliction of Emotional Distress—overlooking the critical fact that this claim was brought solely against the County of Orange.

With respect to the claims that are properly asserted against the City, the Motion offers threadbare briefing that does not meet the City's burden on a motion to dismiss. As the Ninth Circuit has made clear, "Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived." *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010). Courts in this district similarly reject underdeveloped motions. As one court put it: "The Court's role is not to make or develop arguments on behalf of the parties, and . . . failure to present cogent arguments is enough to deny these objections." *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1036 (C.D. Cal. Mar. 20, 2018).

The Court should dismiss the Motion for failure to develop any coherent legal arguments supported by citations to case law.

## V.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8, which "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 requires the plaintiff to make only (1) a short and plain statement of the court's jurisdiction, (2) a short and plain statement of the claim showing that the plaintiff is entitled to relief, and (3) a demand for judgment and relief. *Davis v. Passman*, 442 U.S. 228 (1979); *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). Under federal notice pleading, the complaint must

allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. In deciding whether a pleading states a plausible claim for relief, the court considers the complaint's factual allegations, "together with all reasonable inferences" from those allegations. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys, Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011); *Capogrosso v. Sup. Ct.*, 588 F.3d 180, 184 (3rd Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 662.

Additionally, under federal notice pleading, courts are liberal in construing complaints in favor of plaintiff, and allegations of material fact are taken as true and construed in the light most favorable to the pleader. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003–04 (9th Cir. 2008). In reviewing a dismissal for failure to state a claim under Rule 12(b)(6), the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the appellant. *N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). In *Conley v. Gibson*, 355 U.S. 41 (1957), the United States Supreme Court explained that dismissal for failure to state a claim should only be granted under narrow circumstances, and complaints should not be dismissed unless it appears beyond doubt that the plaintiff cannot prove any facts supporting her claim entitling her to relief. *Id*. at 45–46.

Civil rights actions are governed by the pleading requirements of Rule 8. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). There is no heightened pleading requirement for civil rights cases, and the United States Supreme Court has repeatedly rejected attempts by the Courts of Appeals to impose heightened

pleading requirements in civil rights cases. *Id.*; *Leatherman v. Tarrant Cnty.*, 507 U.S. 163 (1993). To assert a claim under 42 U.S.C. § 1983, a plaintiff has an obligation to put the defendants and the court on notice of what claims are raised in his or her complaint by properly alleging that he or she has been deprived a federal statutory or constitutional right by a person acting under color of state or local law. *Paratt v. Taylor*, 451 U.S. 527, 535 (1981).

# VI. DISCUSSION

## A. The First Cause of Action States a Fourth Amendment Claim of Excessive Force

To state a claim for excessive force under the Fourth Amendment pursuant to 42 U.S.C. § 1983, a plaintiff must allege that a state actor used force that was objectively unreasonable in light of the facts and circumstances confronting the officer. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Courts consider factors such as the severity of the crime, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was resisting arrest or attempting to flee. *Id*

Here, Plaintiff alleges that he was unarmed, not committing a crime, and did not pose an immediate threat of death or serious bodily harm to anyone when Doe Officer shot him in the face. (Compl. ¶¶ 10–11, 25–26.) Plaintiff further alleges that less-lethal alternatives were available, that Doe Officer violated his training, and that no warning was given before the use of deadly force. (¶¶ 12–13, 22, 26.) These allegations, taken as true, are more than sufficient to state a plausible claim that the force used was objectively unreasonable under the circumstances.

Moreover, Plaintiff has alleged severe and lasting physical injuries resulting from the shooting, supporting the claim for damages. (¶¶ 14, 24.) Plaintiff has also alleged that Doe Officer acted maliciously and with conscious disregard for Plaintiff's rights, entitling him to punitive damages. (¶ 28.)

1    Therefore, Plaintiff has adequately stated a claim for relief under the Fourth

2    Amendment, and this portion of the Motion should be denied.

3    **B.      The Second Cause of Action States a Fourth Amendment Claim of**

4            **Denial of Medical Care**

5        Plaintiff has adequately stated a claim under the Fourth Amendment based

6    on Doe Officer's failure to provide or summon timely medical care after using

7    deadly force.

8        In the context of an arrest or detention, the applicable legal standard for both

9    excessive force and failure to provide medical care is the Fourth Amendment's

10    objective reasonableness standard. *Tatum v. City and County of San Francisco*,

11    441 F.3d 1090, 1099 (9th Cir. 2006). Under this standard, officers have a specific

12    duty to "seek the necessary medical attention for a detainee when he or she has

13    been injured while being apprehended by either promptly summoning the

14    necessary medical help or by taking the injured detainee to a hospital." Id. The

15    Ninth Circuit has consistently held that officers violate the Constitution when they

16    fail to seek medical assistance for detainees with obvious or life-threatening

17    injuries. *See Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003)

18    (qualified immunity inappropriate where officers were deliberately indifferent to

19    serious medical needs of person in custody).

20        Here, Plaintiff alleges that after being shot multiple times, including once in

21    the face—an objectively life-threatening injury—Doe Officer failed to promptly

22    summon medical aid, despite the "obvious severity" of Plaintiff's condition.

23    (Compl. ¶ 15.) Plaintiff further alleges that this delay contributed to the severity of

24    his injuries, which include permanent facial disfigurement, nerve damage, tooth

25    loss, and other disabling conditions. (¶ 14.)

26        Contrary to Defendants' suggestion, the fact that Plaintiff ultimately

27    survived does not negate this claim. There is no authority for the proposition that a

constitutional claim for denial of medical care requires death. The proper inquiry is whether the officer's failure to act was objectively unreasonable in light of the known medical needs at the time.

Plaintiff's allegations are more than sufficient to state a Fourth Amendment violation. The complaint pleads that Doe Officer had clear notice of Plaintiff's urgent medical needs, that no countervailing governmental interest justified delaying aid, and that Plaintiff was harmed as a result of that delay. That is enough to survive a motion to dismiss. *Ostling v. City of Bainbridge Island*, 872 F. Supp. 2d 1117, 1129–30 (W.D. Wash., May 7, 2012 ("The right to medical aid in these circumstances is 'clearly established,' and qualified immunity is inappropriate where the disputed evidence suggests that officers knew Douglas was wounded, had no firearm, and had a safe avenue to investigate his medical needs.") (citation omitted).

### C.    The Third Cause of Action States a Claim Under *Monell* for Failure to Train

"[A] local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Place, Inc*., 698 F.3d 1128, 1143 (9th Cir. 2012). A local government's failure to train its employees "may serve as the basis for § 1983 liability…where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. Here, Plaintiff contends that this policy of inaction includes a failure to adequately train officers working for the City's police department.

A plaintiff alleging a failure to train claim must show: (1) he was deprived of a constitutional right; (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its police officers] are likely to come into contact"; and (3) his or her constitutional injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).

Here, Plaintiff has specifically alleged that the City failed to properly train Doe Officer in numerous core areas of constitutional policing, including the use of less-lethal and deadly force, de-escalation, communication, tactical decision-making, and provision of medical care to wounded individuals. (Compl. ¶¶ 47–48.) Plaintiff further alleges that the City's training was not adequate to prepare officers for the types of recurring situations they face and that the City was deliberately indifferent to the obvious consequences of that failure. (¶¶ 48–49.)

Plaintiff was shot in the face by a City police officer despite being unarmed and not posing an immediate threat. The Complaint alleges the shooting occurred without warning and despite the availability of less-lethal alternatives—conduct that directly reflects the kind of deficient training Plaintiff has identified. (¶¶ 10–14, 22–26.) Plaintiff also alleges that the officer failed to summon timely medical assistance despite the obvious severity of the injury, another core deficiency in the City's training. (¶ 15.)

These allegations, taken as true, are more than sufficient at the pleading stage to establish that the City's failure to train was the moving force behind Plaintiff's injuries. Plaintiff has plausibly alleged that with proper training, the constitutional violations in this case could have been avoided. Accordingly, Plaintiff's Monell claim based on failure to train is sufficiently pleaded and should proceed. *See Johnson v. Shasta Cnty.*, 83 F. Supp. 3d 918, 931–32 (E.D. Cal. Jan. 5, 2015).

**D.      The Fourth Cause of Action States a Claim Under *Monell* for Unconstitutional Customs and Policies**

A municipality may be held liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), where a constitutional violation was caused by an official policy, custom, or practice of the municipality. A "policy" refers to a formally adopted rule, ordinance, or directive. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). However, Monell liability is not limited to written policies; a municipality may also be liable for a longstanding custom or practice that, while not formally adopted, is so persistent and widespread that it constitutes the entity's standard operating procedure. See *Shaw v. California Dep't of Alcoholic Beverage Control*, 788 F.2d 600 (9th Cir. 1986) (*Monell* liability may arise from an informal pattern of repeated unconstitutional conduct by public officials).

*Monell* liability may also be based on a municipality's policy of inaction or deliberate indifference. *City of Canton*, 489 U.S. at 388 ("[T]he inadequacy of police training may serve as the basis for § 1983 liability…where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."); *Oviatt* 954 F.2d at 1474 (municipality liable for failure to implement procedural safeguards to protect constitutional rights).

Here, Plaintiff has alleged with specificity that the City of Huntington Beach maintained and tolerated a widespread custom and practice of unconstitutional conduct by its law enforcement officers, including the unjustified use of deadly force, failure to use less-lethal alternatives, failure to issue appropriate warnings, and failure to summon medical aid. (Compl. ¶ 57.) Plaintiff also alleges that these constitutional violations were the predictable result of systemic failures in supervision, training, discipline, and accountability, including the City's longstanding practice of failing to investigate or discipline officers involved in

excessive force incidents, and routinely finding officer-involved shootings "within policy" regardless of their constitutionality. (¶ 57.)

These policies, customs, and practices—including the fostering of a "code of silence" and providing minimal or no consequences for unconstitutional conduct—have created a culture in which officers expect impunity for the unjustified use of deadly force. The allegations further demonstrate that the City had a strong institutional incentive to minimize findings of misconduct in order to avoid liability and public scrutiny, reinforcing a systemic failure to protect the rights of individuals like Plaintiff.

Plaintiff also alleges that these customs and failures were not isolated or new, but long-standing and well known to City policymakers and supervisors. (¶ 57.) The complaint specifically connects these institutional failures to the harm suffered by Plaintiff, alleging that the unconstitutional shooting and subsequent denial of medical care were direct results of the City's deficient policies and entrenched practices. (¶ 60.)

Taken together, these detailed and plausible allegations are sufficient to state a *Monell* claim based on an unconstitutional policy, practice, or custom that was the moving force behind the violation of Plaintiff's constitutional rights. Accordingly, Plaintiff's *Monell* claim should proceed.

### E.    The Fifth Cause of Action States a Claim Under *Monell* for Ratification

The City argues that the Plaintiff has to be able to identify the final policy maker involved in ratifying the officer's conduct in order to adequately allege this claim. This argument, however, is not supported by any citations to case law.

### F.    The Sixth Cause of Action States a Claim Under the ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied

the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Discrimination includes a failure to reasonably accommodate a person's disability.

Here, Plaintiff alleges that he was suffering from suicidal tendencies and severe mental health issues (Compl. ¶ 80), which qualifies him as an individual with a disability. Plaintiff further alleges that the City, through Doe Officer, discriminated against Plaintiff by failing to accommodate his disability in the course of their interaction.

Plaintiffs can state an ADA claim by identifying a "reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Sheehan v. City and County of San Francisco* 743 F.3d 1211, 1232 (9th Cir. 2014). In *Sheehan*, the court held that officers who forced entry into a mentally ill woman's room without using de-escalation tactics could be found liable under the ADA for failing to accommodate her psychiatric disability. The Ninth Circuit emphasized that the reasonableness of an accommodation is ordinarily a question of fact and found that a jury could reasonably conclude that officers should have engaged in non-threatening communications and waited for backup rather than forcing a deadly confrontation. *Id* at 1233.

The allegations here closely parallel those in *Sheehan*. Plaintiff alleges that Doe Officer knew or should have known that Plaintiff was in the midst of a mental health crisis and had numerous reasonable accommodations available—including deploying a crisis intervention team, using calm communication, maintaining distance, and refraining from brandishing a weapon—that were not used. (Compl.

¶ 81.) Instead, Doe Officer escalated the situation and shot Plaintiff in the face, causing life-altering injuries. (¶¶ 11–14.)

Plaintiff also alleges that the City failed to adequately train its officers on how to respond to individuals in psychiatric distress and failed to implement or follow policies for peaceful and effective de-escalation. (¶ 82.) These failures mirror the systemic deficiencies that courts have found sufficient to support a claim under Title II of the ADA.

Because Plaintiff has specifically alleged a disability, a failure to provide reasonable accommodations, and resulting discrimination by reason of that disability, he has stated a viable claim under the ADA. Like in Sheehan, a jury could reasonably find that accommodations were available and should have been provided, and thus dismissal at the pleading stage would be inappropriate.

Accordingly, the City's motion to dismiss this claim should be denied.

## G.    The Seventh Cause of Action States a Battery Claim

Under California law, a peace officer may be held liable for battery if the officer uses excessive or unreasonable force in the course of making an arrest or detention. CACI 1305A/B.

Here, the complaint alleges that Doe Officer intentionally discharged his firearm at Plaintiff, striking him in the face and causing severe, permanent injuries. (Compl. ¶ 86.) The complaint further alleges that Plaintiff was unarmed, posed no immediate threat of death or serious bodily injury to anyone, and that Doe Officer failed to issue a warning or consider less-lethal alternatives before resorting to deadly force. (¶ 87.)

These allegations support a plausible inference that the use of deadly force was objectively unreasonable under the circumstances and therefore unlawful under California law.

Therefore, this portion of the Motion should be denied.

**H.     The Eighth Cause of Action States a Negligence Claim**

Under California law, negligence requires a showing that the defendant owed a duty of care, breached that duty, and caused harm as a result. CACI 400. Police officers have a duty to use reasonable care in deciding whether to use deadly force and in the manner in which such force is applied. This standard is reflected in CACI 440, which instructs that an officer may only use deadly force when it is necessary to defend human life. Further, officers should consider less-lethal alternatives and should give a warning where feasible.

The Complaint alleges that Doe Officer breached this duty of care when he intentionally fired multiple rounds at Plaintiff despite Plaintiff being unarmed, posing no immediate threat of death or serious bodily injury, and without first giving a warning or attempting reasonable alternatives to deadly force. Doe Officer's pre-shooting conduct—escalating the situation, failing to use de-escalation tactics, and neglecting to provide time or opportunity for Plaintiff to comply with commands—further underscores the unreasonableness of his actions. In addition, after shooting Plaintiff, Doe Officer failed to provide or promptly summon medical assistance, exacerbating Plaintiff's injuries and causing additional harm.

These allegations, taken as true, demonstrate that Doe Officer's conduct fell below the standard of care that a reasonably careful officer would have used under similar circumstances. Accordingly, Plaintiff has adequately stated a claim for negligence under California law and this portion of the Motion should be denied.

**I.     The Ninth Cause of Action is Not Brought Against the City**

The City's motion seeks dismissal of the Ninth Cause of Action for Intentional Infliction of Emotional Distress ("IIED"). But that claim is not brought against the City. As the Complaint makes clear, the IIED claim is alleged solely against the County of Orange and its employees based on distinct conduct that

occurred after the shooting. The City is not named in the Ninth Cause of Action, and no facts are alleged against the City in that section.

A motion to dismiss a claim that is not alleged against the moving party is improper and reflects a failure to engage meaningfully with the pleadings. The City's request to dismiss the IIED claim should be denied.

### J.    The Tenth Cause of Action States a Claim Under the Bane Act

The Ninth Circuit has stated that "reckless disregard" for a person's constitutional rights is evidence of a violation of the Bane Act. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) (holding that "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights") (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).

Plaintiff has set forth sufficient facts to establish that the responding officer acted with a reckless disregard for Plaintiff's constitutional rights. Doe Officer responded to the scene, aware that a young man was suffering a mental health crisis and suffering from suicidal ideation. When he arrived, he saw Plaintiff, a 28-year-old man, a victim to a mental health crisis who was unarmed and posed no threat of serious injury to anyone. And despite the lack of life-threatening circumstances, the officer shot this unarmed young man in the face.

Such conduct showed a reckless disregard for Plaintiff's right to be free of excessive and unreasonable force.

### K.    Should the Court Dismiss Any Claims, Plaintiff Requests Leave to Amend

Should this Court be inclined to grant the City's Motion, then Plaintiff respectfully requests that he be permitted to amend his Complaint to cure any deficiencies identified by the Court. Federal Rule of Civil Procedure 15(a)(2), provides that leave to amend "shall be freely given when justice so requires." The

Ninth Circuit has held that "[t]his policy is applied with 'extraordinary liberality.'"
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)
(quoting *Ownes v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.
2001); *DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).
Indeed, "leave to amend the pleadings is freely given unless the opposing party
makes a showing of undue prejudice, or bad faith or dilatory motive on the part of
the moving party." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Martinez v.
Newport Beach City*, 125 F.3d 777, 785 (9th Cir. 1997).

## VII.  CONCLUSION

For the reasons set forth above, the Court should deny the City's Motion in
its entirety. The Motion fails to comply with Local Rule 7-3, lacks developed legal
arguments, and ignores well-pleaded factual allegations that support each of
Plaintiff's claims. In the alternative, if the Court is inclined to grant any portion of
the Motion, Plaintiff respectfully requests leave to amend.

Respectfully Submitted,

Dated: August 1, 2025          **LAW OFFICES OF DALE K. GALIPO**

By:  */s/   Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiff Tyler Smith*

1
2

**Certificate of Compliance**

3

    The undersigned, counsel of record for Plaintiff Tyler Smith, certifies that

4

this brief contains 4,804 words, which complies with the 7,000 word limit of L.R.

5

11-6.1.

6
7

Dated: August 1, 2025        **LAW OFFICES OF DALE K. GALIPO**

8
9

        By:   */s/   Cooper Alison-Mayne*

10

              Dale K. Galipo
              Cooper Alison-Mayne

11

              *Attorneys for Plaintiff Tyler Smith*

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28